AO 91 (Rev. 08/09)   Criminal Complaint

## SEALED

FILED by _____ D.C.

OCT - 7 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 13-6462- Hunt |
| MARQUIS ONIGIRIN MOYE, and ANGELA DIONE ROSIER, | ) ) ) | |
| _____ *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  November 2011 to September 2013  in the county of  Miami Dade  in the

 Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(b)(2) | Conspiracy to Commit Access Device Fraud. |

This criminal complaint is based on these facts:

### See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Gregory S. Cipriano, Special Agent-FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10/07/13 

_____
*Judge's signature*

City and state:   FORT LAUDERDALE, FLORIDA 

PATRICK M. HUNT, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

I, Gregory S. Cipriano, Special Agent for the Federal Bureau of Investigation, being duly sworn, state the following is true and correct to the best of my knowledge:

1.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.   This affidavit is submitted for the limited purpose of establishing probable cause that Marquis Onigirin MOYE, and Angela Dione ROSIER committed the offenses set forth in the attached complaint and as such, does not include each and every fact known to law enforcement concerning this investigation.

2.      Based on my training and experience, and information provided by other law enforcement officers, identity theft tax fraud schemes and other fraud related to identity theft are prevalent in the South Florida area.  The basic tax fraud scheme works as follows:  (a) an identity thief obtains personal identification information (names, dates of birth, and social security numbers) of victims in a variety of different ways, including through employees at medical facilities or elsewhere; (b) this personal identification information is used to file fraudulent U.S. income tax returns for the purpose of generating a fraudulent tax refund;  (c) the tax refunds are paid out either in the form of U.S. Treasury checks, deposited into a bank account, or charged to a pre-paid debit card; and (d) the identity thief then depletes the funds by cashing the checks or withdrawing the money from the depository account.   This same personal identification information can be used to obtain credit cards, open bank accounts, or access the victim's current bank accounts.  The credit cards are then used to make unauthorized purchases, or the thief will obtain funds from the victim's account.

3.      In May of 2012, law enforcement began investigating the cocaine-trafficking activities of Target Defendant #1. Based on the investigation, including a controlled purchase of personal identification information ("PII") and a search warrant that was executed at the home of Target Defendant #1, law enforcement agents obtained documents containing hundreds of names, addresses, dates of birth, and social security numbers. Examination revealed that each page was titled "Patient List." Each page was numbered and at the bottom of each page there was a Uniform Resource Locator ("URL") along with a date of "6/19/2012." The URL indicated that the pages were from a specific medical services provider (hereinafter the "provider"). The contents of each page was a spreadsheet listing the patient's social security number, the patient's full name, the patient's date of birth, the patient's address, and various billing information. Law enforcement agents subsequently determined that the PII had been obtained from the provider. The provider is a medical services company that is headquartered in the State of New York and has a local office located in Delray Beach, Florida. The provider performs at-home medical services for patients in South Florida, and in the New York area.

4.      On July 30, 2012, law enforcement agents met with the provider's management to notify them of the illegal intrusion into their computer network and subsequent theft of PII. The management for the provider immediately took precautionary steps to prevent further intrusions by changing the username and passwords of their employees. Management for the provider also subsequently identified an IP address that was continuing to access their networks without authorization. Law enforcement agents were later able to trace the IP address to the residence of Target Defendant #2, a former employee of the provider who was fired on October 28, 2011.

5.     On July 31, 2012, management for the provider became aware that the same IP address was unsuccessfully attempting to gain access to their network with an assortment of different username and password combinations.  On August 2, 2012 additional unsuccessful logon attempts were made from the same IP address before an eventual successful logon at 9:57 p.m. using the username and password of a current employee.  The employee was subsequently interviewed by law enforcement agents and was eliminated as a conspirator in the investigation.

6.     On August 23, 2012 a search warrant was conducted at the residence of Target Defendant #2 in Deerfield Beach, Florida.  Evidence seized from Target Defendant #2's residence included a computer that was later found to contain PII of over 1,300 individuals.  The PII was identified as belonging to patients of the provider and was found to have been accessed from the provider's network after October 28, 2012, the date that Target Defendant #2 was fired.  Thus far, law enforcement agents have interviewed 20 individuals that Target Defendant #2 possessed PII for.  Each of these individuals confirmed that they did not authorize Target Defendant #2 to possess their personal information for any reasons.

7.     During the execution of the search warrant at Target Defendant #2's residence, law enforcement agents interviewed Target Defendant #2, who admitted to illegally logging on to the provider computer network and downloading PII for the purpose of committing various types of fraud.  Target Defendant #2 also stated that Angela ROSIER and Marquis MOYE assisted Target Defendant #2.  Target Defendant #2 explained that ROSIER was a current employee of the provider who had approached her in early 2012 and expressed a desire to learn how to use the PII from the provider to commit fraud.  Target Defendant #2 subsequently met with ROSIER and introduced her to MOYE, who was committing fraud with Target Defendant #2.  Moreover, Target Defendant #2 explained that on August 2, 2012, Target Defendant #2

contacted ROSIER via ROSIER's cellular telephone, and asked that she obtain a new username and password for the provider's computer network. ROSIER subsequently provided the username and password of a current employee on a night that ROSIER was working at the provider's South Florida location. During one of the conversations between Target Defendant #2 and ROSIER, ROSIER stated that she was looking around the office for the logon information of other provider employees. Target Defendant #2 provided ROSIER's cellular telephone number as (954) 464-3825. Law enforcement agents have confirmed through telephone toll records that Target Defendant #2 cellular telephone was in contact with the telephone used by ROSIER.

8.      Immediately following the interview with Target Defendant #2, law enforcement agents visited MOYE at his residence in Pompano Beach, Florida. MOYE verbally consented to a search of his residence for PII and agreed to participate in an interview. In the interview, MOYE made admissions to conducting various types of fraud with the PII that had been obtained from Target Defendant #2. MOYE denied involvement in any fraudulent tax refund scheme but did admit to being involved in various fraudulent account takeover activities. MOYE admitted to knowing the username and password for the provider's computer network and that Target Defendant #2 may have mentioned the username and password to him. A subsequent analysis of MOYE's electronic devices and handwritten items and that were seized from his residence revealed that MOYE was in the possession of PII for at least 29 individuals. Law enforcement agents were able to identify that some of these individuals were patients of the provider and that others were unrelated to the provider and were obtained by MOYE from some other means. Thus far, law enforcement agents have interviewed 15 individuals that MOYE possessed PII for. Each of these individuals confirmed that they did not authorize MOYE to possess their personal information for any reasons.

Page **4** of **7**

9.    On August 27, 2012, law enforcement agents interviewed ROSIER at her residence, and she confirmed that her telephone number was (954) 464-3825.  ROSIER stated that she had not spoken to Target Defendant #2 since November 2011.  When law enforcement agents advised her that her statement would be checked across telephone call records, she abruptly stated that she had spoken to Target Defendant #2 three weeks prior to the interview. Call records and subscriber records were later obtained for ROSIER's cellular telephone.  These call records were analyzed and reflected several phone conversations being made between ROSIER and Target Defendant #2, including multiple phone conversations on August 2, 2012, the day that Target Defendant #2 was able to logon to the provider's network with a new username and password.  In fact, records obtained from the provider revealed that the first successful logon made by Target Defendant #2 using the new username and password was made just a few minutes after concluding a phone conversation with ROSIER.  Employee timesheets provided by management of the provider was later obtained and reflected that ROSIER was alone at the office from approximately 7:25 P.M. to 11:30 P.M.

10.    On November 29, 2012, MOYE made attempts to purchase electronic devices at a Wal-Mart location in Coconut Creek, Florida, using a visa credit card in the name of another individual.  MOYE attempted the purchase while using a fraudulent driver's license, in the name of the cardholder, with MOYE's photo depicted on the license, as a form of identification.  Wal-Mart employees contacted the Coconut Creek Police Department when the fraudulent activity was notified.  Coconut Creek Police Detectives subsequently responded and arrested MOYE for his activities.  The identity theft victim was contacted by law enforcement agents shortly thereafter and the victim confirmed that they did not know MOYE or authorize MOYE to

conduct any transactions in their name. This same victim confirmed that they were at one time a patient of the provider.

11.     Based on the foregoing facts and circumstances, and your Affiant's training, knowledge and expertise, there is probable cause to believe that in the Southern District of Florida, MOYE and ROSIER:

- Did knowingly and intentionally combine, conspire, confederate, and agree with each other, and with others unknown, to participate in a scheme to possess and use the means of identification of third party identity theft victims to violate enumerated offenses of 18. U.S.C. Section 1029(a), namely:

    (1) to knowingly, and with intent to defraud, possess fifteen (15) or more devices which are unauthorized access devices, said conduct affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(3); and

    (2) to knowingly, and with intent to defraud, use one or more unauthorized access devices during any one year period, and by such conduct obtain anything of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(2)

The conspiracy began as early as November 2011 after Target Defendant #2 continued to access the patient database of the provider after being terminated and continued through at least November 29, 2012, the date in which MOYE

attempted to make fraudulent purchases at a Wal-Mart location using false documents in the name of a patient of the provider.

FURTHER YOUR AFFIANT SAYETH NOT,

Gregory S. Cipriano
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
This 8th day of October, 2013.

PATRICK M. HUNT
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MISC NO. 13-6462-Hunt

**UNITED STATES OF AMERICA**

**vs.**

**MARQUIS ONIGIRIN MOYE, and**
**ANGELA DIONE ROSIER,**

**Defendants.**

_____ /

## CRIMINAL COVER SHEET

1.    Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes _____X_____ No

2.    Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes ____X_____ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

CYNTHIA R. WOOD
ASSISTANT UNITED STATES ATTORNEY
Court ID No. A5501329
99 N.E. 4th Street
Miami, Florida 33132
TEL (305) 961-9202
FAX (305) 536-7213
Cynthia.Wood@usdoj.gov